UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
HUDSON VALLEY BONE AND JOINT          :
SURGEONS, LLP,                        :
               Plaintiff,        :
                                      :
v.                                    :          **OPINION AND ORDER**
                                      :
CNA FINANCIAL CORPORATION and         :          20 CV 6073 (VB)
NATIONAL FIRE INSURANCE COMPANY       :
OF HARTFORD,                          :
               Defendants.       :
---------------------------------------------------------------x

Briccetti, J.:

     Plaintiff Hudson Valley Bone and Joint Surgeons, LLP ("Hudson Valley"), brings this action against defendants CNA Financial Corporation ("CNA") and National Fire Insurance Company of Hartford ("NFICH"), alleging breach of contract and breach of the implied covenant of good faith and fair dealing with respect to defendants' denial of insurance coverage for losses plaintiff allegedly sustained as a result of government restrictions on essential businesses during the COVID-19 pandemic.

     Now pending is defendants' motion to dismiss the first amended complaint ("FAC") pursuant to Rule 12(b)(6) for failure to state a claim.  (Doc. #21).

     For the reasons set forth below, the motion is GRANTED.

     The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a).

## BACKGROUND

     For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded allegations in the FAC and draws all reasonable inferences in plaintiff's favor, as summarized below.

Plaintiff alleges it is a medical group comprised of orthopedic surgeons and specialists who treat patients at two insured premises:  24 Saw Mill River Road, in Hawthorne, New York, and 819 Yonkers Avenue, in Yonkers, New York (the "insured premises" or the "Covered Property").  According to plaintiff, CNA is an insurance underwriter, and NFICH is a wholly owned subsidiary of CNA that sells insurance on CNA's behalf.

I.    The Insurance Policy

Plaintiff alleges it purchased an "all risk" commercial property insurance policy from defendants, which provided coverage from August 1, 2019, through August 1, 2020 (the "Policy").  The Policy states:  "We will pay for direct physical loss of or damage to Covered Property. . . caused by or resulting from a Covered Cause Of Loss."  (Doc. #20-1 (the "Policy") at ECF 19).[1]  "Covered Causes of Loss" are defined as "risks of direct physical loss unless the loss is" excluded or limited by the Policy.  (Id. at ECF 20–21).

The Policy contains a "Business Income" provision, which provides coverage for the loss of certain business income:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration."  The "suspension" must be caused by direct physical loss of or damage to property at the described premises.  The loss or damage must be caused by or result from a Covered Cause of Loss.

(Policy at ECF 41).  "Suspension" is defined in the Policy as "[t]he partial or complete cessation of your business activities; or that a part or all of the described premises is rendered untenantable."  (Id. at ECF 38).

---

[1]    "ECF _" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). Plaintiff attached a copy of the Policy and claim denial letter to the FAC.

In addition, the Policy's "Extra Expense" provision allows recovery of "[r]easonable and necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss."  (Policy at ECF 42).

The Policy also includes a section entitled "Duties In The Event Of Loss Or Damage," which provides steps the insured must take in "the event of loss or damage to the Covered Property," including steps to mitigate damages.  (Policy at ECF 27).

Finally, the Policy's "Civil Authority" provision provides:

> When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises.  The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss.

(Policy at ECF 63).

II.   COVID-19 and Government Action

Plaintiff alleges that in accordance with orders issued by state and local authorities, which limited operations for both non-essential and essential businesses during the COVID-19 pandemic, plaintiff closed the Hawthorne location from March 16 to April 13, 2020, and the Yonkers location from March 16 to an unspecified date in May 2020.

Plaintiff and defendants agree plaintiff's business is an essential business under the relevant government orders and therefore was not required to close at any time during the pandemic.

Plaintiff alleges that on April 24, 2020, plaintiff made a claim for insurance coverage under the Policy for its "property and business interruption losses as well as extra expenses

incurred as a direct result of the statewide disaster emergency orders." (Doc. #20 ("FAC") at

ECF 1). According to plaintiff, defendants denied its claim because it did not report any direct

physical loss or damage to the insured premises.

**DISCUSSION**

I.      Standard of Review

        In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative

complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v.

Iqbal, 556 U.S. 662, 679 (2009).[2] First, a plaintiff's legal conclusions and "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," are not entitled

to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678;

Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

        To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard

of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544,

564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

---

[2]      Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

II.     Breach of Contract Claim

Plaintiff's breach of contract claim is based on defendants' alleged failure to provide (i) business income coverage, (ii) extra expense coverage, (ii) civil authority coverage, and (iv) sue and labor coverage.  Defendants argue plaintiff fails plausibly to allege that it suffered a covered loss under the Policy.

A.     Applicable Law

Under New York law, "insurance policies are interpreted according to general rules of contract interpretation."  Olin Corp. v. Am. Home Assurance Co., 704 F.3d 89, 98 (2d Cir. 2012).[3]  Courts must "give effect to the intent of the parties as expressed in the clear language of the contract."  Ment Bros. Iron Works Co. v. Interstate Fire & Cas. Co., 702 F.3d 118, 122 (2d Cir. 2012).  "Terms in an insurance contract must be given their plain and ordinary meaning." Id.

The initial interpretation of a contract and whether its terms are ambiguous are questions of law for the Court to decide.  See Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006).  Contract terms are ambiguous when they are "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."  Olin Corp. v. Am. Home Assurance Co., 704 F.3d at 99.  "[A]ny ambiguity must be resolved in favor of the insured and against the insurer."  Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d at 42.

---

[3]     Neither side has pointed to a choice of law provision specifying New York law applies to the Policy, but in their papers, the parties applied New York law.  "[S]uch implied consent is, of course, sufficient to establish the applicable choice of law."  Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 39 (2d Cir. 2009).

By contrast, policy terms are unambiguous when they provide "a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." Olin Corp. v. Am. Home Assurance Co., 704 F.3d at 99.  "If a contract is unambiguous, courts are required to give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning." Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 573 (2d Cir. 1993). Contractual language "whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation, unless each is a 'reasonable' interpretation." Law Debenture Tr. Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010).  "[T]he court should not find the contract ambiguous where the interpretation urged by one party would strain the contract language beyond its reasonable and ordinary meaning." Id.

B.     Business Income Coverage

First, defendants argue plaintiff has not plausibly alleged it suffered a "direct physical loss or damage to" property as a result of its COVID-19-related closures because the terms of the Business Income coverage apply only to losses caused by physical damage, and plaintiff has not alleged any physical damage to the Covered Property.

The Court agrees.

The Policy does not define "direct physical loss of or damage to."  However, numerous courts applying New York law have recently considered whether the presence of COVID-19 constitutes direct physical loss of or damage to property and uniformly answer this question in

the negative.[4]  Relying on <u>Roundabout Theatre Co. v. Cont'l Cas. Co.</u>, 302 A.D.2d 1 (1st Dep't

2002), these courts have concluded that the clause "direct physical loss of or damage to" (or

substantially similar policy language) requires "physical damage to the insured's property."  <u>Id.</u>

at 7; <u>e.g.</u>, <u>SA Hosp. Grp., LLC v. Hartford Fire Ins. Co.</u>, 2021 WL 2291116, at *8 ("[T]he

operative language 'due to direct physical loss of or direct physical damage to property'

unambiguously requires [plaintiff] to show demonstrable physical harm of some form to the

---

[4]     <u>See</u> <u>The Chef's Warehouse, Inc. v. Employers Ins. Co. of Wausau</u>, 2021 WL 4198147, at
*8–10 (S.D.N.Y. Sept. 15, 2021); <u>WM Bang LLC v. Travelers Cas. Ins. Co. of Am.</u>, 2021 WL
4150844, at *4 (S.D.N.Y. Sept. 13, 2021); <u>Elite Union Installations, LLC v. Nat'l Fire Ins. Co. of
Hartford</u>, 2021 WL 4155016, at *5 (S.D.N.Y. Sept. 13, 2021); <u>Gammon and Associates, Inc. v.
Nat'l Fire Ins. Co. of Hartford</u>, 2021 WL 3887718, at *5 (S.D.N.Y. Aug. 31, 2021); <u>BR Rest.
Corp. v. Nationwide Mut. Ins. Co.</u>, 2021 WL 3878991, at *1 (E.D.N.Y. Aug. 24, 2021);
<u>Northwell Health, Inc. v. Lexington Ins. Co.</u>, 2021 WL 3139991, at *1 (S.D.N.Y. July 26, 2021);
<u>Salvatore's Italian Gardens, Inc. v. Hartford Fire Ins. Co.</u>, 2021 WL 3162800, at *4 (W.D.N.Y.
July 7, 2021); <u>Broadway 104, LLC v. XL Ins. Am., Inc.</u>, 2021 WL 2581240, *3–4 (S.D.N.Y.
June 23, 2021); <u>Buffalo Xerographix, Inc. v. Sentinel Ins. Co., Ltd.</u>, 2021 WL 2471315, at *5
(W.D.N.Y. June 16, 2021); <u>Office Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford</u>, 2021 WL
2403088, at *7 (S.D.N.Y. June 11, 2021); <u>SA Hosp. Grp., LLC v. Hartford Fire Ins. Co.</u>, 2021
WL 2291116, at *8 (D. Conn. June 3, 2021); <u>Deer Mountain Inn, LLC v. Union Ins. Co.</u>, 2021
WL 2076218, at *1 (N.D.N.Y. May 24, 2021); <u>Rye Ridge Corp. v. Cincinnati Ins. Co.</u>, 2021 WL
1600475, at *3 (S.D.N.Y. Apr. 23, 2021); <u>Kim-Chee, LLC v. Phila. Indemnity Ins. Co.</u>, 2021
WL 1600831, at *4 (W.D.N.Y. Apr. 23, 2021); <u>Mohawk Gaming Enterprises, LLC v. Affiliated
FM Ins. Co.</u>, 2021 WL 1419782, at *5 (N.D.N.Y. Apr. 15, 2021); <u>Jeffrey M. Dressel, DDS.,
P.C. v. Hartford Ins. Co. of the Midwest, Inc.</u>, 2021 WL 1091711, at *5 (E.D.N.Y. Mar. 22,
2021); <u>Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co., Ltd.</u>, 2021 WL 1034259, at *7
(S.D.N.Y. Mar. 18, 2021) (report and recommendation); <u>Food for Thought Caterers Corp. v.
Sentinel Ins. Co., Ltd.</u>, 2021 WL 860345, at *3–4 (S.D.N.Y. Mar. 6, 2021);  <u>DeMoura v. Cont'l
Cas. Co.</u>, 2021 WL 848840, at *5 (E.D.N.Y. Mar. 5, 2021); <u>Tappo of Buffalo, LLC v. Erie Ins.
Co.</u>, 2020 WL 7867553, at *4 (W.D.N.Y. Dec. 29, 2020) (report and recommendation); <u>10012
Holdings, Inc. v. Sentinel Ins. Co., Ltd.</u>, 507 F. Supp. 3d 482, 485–87 (S.D.N.Y. 2020) <u>appeal
docketed</u>, No. 21-80 (2d Cir. Jan. 14, 2021); <u>Michael Cetta, Inc. v. Admiral Indem. Co.</u>, 506 F.
Supp. 3d 168, 176–77 (S.D.N.Y. 2020), <u>appeal</u> <u>withdrawn</u>, 2021 WL 1408305 (2d Cir. Mar. 23,
2021).

       Several New York state courts applying New York law have also reached this conclusion.
<u>See</u>, <u>e.g.</u>, <u>Benny's Famous Pizza Plus Inc. v. Sec. Nat'l Ins. Co.</u>, 72 Misc.3d 1209(A) (N.Y. Sup.
Ct. 2021) (table) (collecting cases).

premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure.").

The same reasoning applies here.  The FAC contains no allegations that plaintiff suffered physical harm to either of its premises.  Thus, plaintiff fails plausibly to allege that the presence of COVID-19 at the Covered Property caused plaintiff direct physical loss or direct physical damage.

Rather, relying on allegations that "the COVID-19 virus was present on all of Plaintiff's insured properties" and "there was an imminent risk of on-site viral presence at all relative times, or both," plaintiff argues it suffered a "loss of use" of the insured premises.  (FAC ¶¶ 45, 62).  In other words, plaintiff contends that the phrase "direct physical loss" should be broadly construed to include "loss of use."  This does not save plaintiff's claim for Business Income coverage. "After Roundabout Theatre, courts applying New York law have consistently concluded that loss of use of an insured's premises does not trigger Business Income coverage when the policy provides that such coverage requires evidence of physical damage or physical loss."  Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd., 2021 WL 860345, at *3–4 (collecting cases); Northwell Health, Inc. v. Lexington Ins. Co., 2021 WL 3139991, at *6 (rejecting argument that respiratory droplets carrying the coronavirus caused plaintiff direct physical loss or damage and explaining plaintiff's "preferred interpretation risks impermissibly collapsing coverage for direct physical loss or damage into 'loss of use' coverage").

Indeed, "[t]he presence of the coronavirus does not physically alter property in a permanent manner."  Buffalo Xerographix, Inc. v. Sentinel Ins. Co., Ltd., 2021 WL 2471315, at *4.  The coronavirus is different from other physical or chemical contaminants, such as lead or asbestos, that have been found to cause "direct physical loss or damage" to property.  Id.

8

"Instead, the coronavirus poses a temporary health hazard to the occupants of a building, whose threat to human health dissipates with the passage of time." Id.; Kim-Chee LLC v. Philadelphia Indem. Ins. Co., 2021 WL 1600831, at *4  ("The virus is short-lived—if 'life' is the correct expression—and is rendered harmless by the passage of a few days of exposure to the environment."); Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd., 2021 WL 860345, at *5 ("[C]ontamination of the premises by a virus does not constitute a 'direct physical loss' because the virus's presence can be eliminated by routine cleaning and disinfecting, and an item or structure that merely needs to be cleaned has not suffered a direct physical loss.").

Moreover, plaintiff provides no compelling reason for this Court to diverge from either the holdings in Roundabout Theatre Co. v. Cont'l Cas. Co. or from the numerous courts applying New York law that have determined that the presence of COVID-19 does not constitute direct physical loss of or physical damage to property.  As another court in this Circuit has recently explained:

> [T]he Court is bound to follow state law as interpreted by its intermediate appellate courts unless the Court finds persuasive evidence that the highest state court, which has not ruled on the issue, would reach a different conclusion. . . . Plaintiff cites no New York caselaw or other authority questioning the wisdom of Roundabout Theatre.  Nor has it cited any authority suggesting the highest court of that state should or would overrule it.  On the contrary, Roundabout Theatre is well settled and near-universally applied New York law.

SA Hosp. Grp., LLC v. Hartford Fire Ins. Co., 2021 WL 2291116, at *4, *7 (citing Pahuta v. Massey-Ferguson, Inc., 170 F.3d 125, 134 (2d Cir. 1999)).

Plaintiff does identify two cases applying New York law that purportedly demonstrate that the decisions "addressing business interruption coverage in light of the COVID-19 pandemic are no longer uniform."  (Doc. #37 ("Pl. Second Notice of Supp. Auth.")).  These cases do not alter the Court's view.

First, although <u>Kingray Inc. v. Farmers Grp. Inc.</u>, 2021 WL 837622 (C.D. Cal. Mar. 4, 2021), concluded that the on-site presence of the COVID-19 virus or government closure orders constitute "direct physical loss of" property, the Court does not find this decision persuasive because it did not consider <u>Roundabout Theatre Co. v. Cont'l Cas. Co.</u>—perhaps because the court's analysis considered both New York and California insurance law.  Indeed, the case relied on the surplusage argument expressly rejected by <u>Roundabout Theatre Co. v. Cont'l Cas. Co.</u> without addressing why the New York Court of Appeals would reach a contrary outcome.

Second, <u>Thor Equities, LLC v. Factory Mutual Ins. Co.</u>, 2021 WL 1226983 (S.D.N.Y. Mar. 31, 2021), is inapposite.  There, the parties noted that the question of whether or not COVID-19-related closures and losses constituted "direct physical loss" within the meaning of an insurance coverage policy was not implicated.  <u>Id</u>. at *5.

Thus, plaintiff fails plausibly to allege direct physical loss of or physical damage to its premises as a result of the on-site presence of the COVID-19 virus or the related government orders.

Accordingly, plaintiff's breach of contract claim based on denial of Business Income coverage must be dismissed.

C.   <u>Extra Expense Coverage</u>

Second, plaintiff argues it is entitled to coverage pursuant to the Extra Expense coverage provision.  However, the Extra Expense coverage provision, like the Business Income provision, requires "direct physical loss of or damage to" the insured premises.  (Policy at ECF 42). Accordingly, for the same reasons discussed above, plaintiff fails plausibly to allege the Extra Expense provision was triggered.

Accordingly, plaintiff's breach of contract claim based on denial of Extra Expense coverage must also be dismissed.

      D.    <u>Civil Authority Coverage</u>

Third, defendants argue plaintiff fails plausibly to allege Civil Authority coverage. The Court agrees.

The Civil Authority provision provides coverage for loss of business income "caused by action of civil authority that prohibits access to the described premises" when the civil authority action is "due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss."  (Policy at ECF 63).

Here, plaintiff alleges the COVID-19 virus was present at buildings near the Covered Property, leading to government action restricting access to those properties.  In other words, plaintiff's argument that it should have been granted Civil Authority coverage is also based upon an impermissible "loss of use" theory.  And indeed, "courts interpreting similar Civil Authority coverage provisions have uniformly concluded that the New York executive orders were issued not in response to specific instances of physical loss or damage to property but rather in response to the spread of the coronavirus."  <u>Salvatore's Italian Gardens, Inc. v. Hartford Fire Ins. Co.</u>, 2021 WL 3162800, at *4.  Thus, again, because plaintiff does not plausibly allege that civil authority orders were issued due to direct physical loss or damage to any property, plaintiff also fails to plead a breach of contract claim based upon defendants' denial of Civil Authority coverage.

  Moreover, plaintiff has not pleaded that it was "prohibit[ed] access to the described premises."  (Policy at ECF 63); <u>see</u> <u>Salvatore's Italian Gardens, Inc. v. Hartford Fire Ins. Co.</u>, 2021 WL 3162800, at *4 (dismissing contract claim based on allegations of breach of Civil

Authority provision because "the Complaint does not allege that the executive orders 'specifically prohibited' Plaintiffs' access to their premises").  Indeed, plaintiff alleges it closed its business to "devise a safety protocol for the safe reintroduction of a severally limited number of patients into the premises and secure the necessary and required personal protective equipment ('PPE'), UV lights, other disinfectants, and other required materials to be able to reopen in a safe manner."  (FAC at ECF 5).

Accordingly, plaintiff's breach of contract claim based on denial of Civil Authority coverage fails.

E.      Sue and Labor Coverage

Finally, defendants argue plaintiff fails plausibly to allege a breach of contract based upon the "Sue and Labor" provision, because such provision does not provide independent coverage.

The Court agrees.

There is no so-called "Sue and Labor" provision in the Policy.  Rather, this claim is based upon the "Duties In The Event Of Loss Or Damage" provision of the Policy, which provides steps the insured must take in "the event of loss or damage to the Covered Property," including steps to mitigate damages.  (Policy at ECF 27).  The provision does not provide independent coverage.  And because plaintiff has not otherwise plausibly pleaded that it is entitled to coverage under the Policy, it also has not pleaded any reason why it should be reimbursed for mitigation expenses.

Accordingly, to the extent plaintiff's breach of contract claim is based on denial of "Sue and Labor" coverage, it too fails.

In sum, plaintiff has failed to state a claim for breach of contract.[5]

III.   <u>Breach of Implied Covenant of Good Faith and Fair Dealing</u>

Defendants argue plaintiff's claim for breach of the implied covenant of good faith and fair dealing should be dismissed because the claim is premised on the same facts as plaintiff's breach of contract claim.

The Court agrees.

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." <u>Cruz v. FXDirectDealer, LLC</u>, 720 F.3d 115, 125 (2d Cir. 2013).  "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." <u>Id</u>.  When a complaint alleges both a breach of contract and a breach of implied covenant of good faith and fair dealing on the same facts, a court should dismiss the claim for breach of implied covenant of good faith and fair dealing as redundant.  <u>Id</u>.

Plaintiff's claim for breach of implied covenant of good faith and fair dealing merely restates its breach of contract claim.  The crux of both claims is that defendants refused to acknowledge coverage of plaintiff's lost income during the COVID-19 pandemic.  Because plaintiff's claim is based upon the same facts and predicated on the same contractual terms as the plaintiff's breach of contract claim, it must be dismissed as duplicative.[6]

---

[5]    Since plaintiff has not plausibly pleaded coverage under the Policy, the Court need not address the parties' arguments regarding the Policy's exclusions.

[6]    Because plaintiff has not plausibly pleaded coverage under the Policy, the Court does not reach plaintiff's arguments about piercing the corporate veil.

IV.    <u>Leave to Amend</u>

    In two lines, plaintiff requests that if the Court grants the motion to dismiss, it should be granted leave to amend the FAC.  Although leave to amend should be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), requests for leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." <u>Burch v. Pioneer Credit Recovery, Inc.</u>, 551 F.3d 122, 126 (2d Cir. 2008) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)); <u>see</u> <u>TechnoMarine SA v. Giftports, Inc.</u>, 758 F.3d 493, 505 (2d Cir. 2014) (leave to amend may be denied when the plaintiff "fails to specify . . . how amendment would cure the pleading deficiencies in its complaint").

    Here, after defendants moved to dismiss the original complaint, the Court instructed plaintiff to notify the Court whether it intended to file an amended complaint in response to the motion to dismiss, noting that if plaintiff elected not to file an amended complaint, the Court would be unlikely to grant plaintiff a further opportunity to amend to address the purported deficiencies made apparent by the fully briefed arguments in defendants' motion.  (Doc. #17). Plaintiff did amend the complaint (Doc. #20), but has "failed to resolve its pleading deficiencies in its First Amended Complaint."  <u>TechnoMarine SA v. Giftports, Inc.</u>, 758 F.3d at 506. Moreover, plaintiff identifies no basis for amendment, sets forth no additional facts it intends to allege, or otherwise demonstrates that further amendment would not be futile.

    Leave to amend is therefore denied.

## CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #21) and close this case.

Dated: September 22, 2021
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

15